**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ABDULKADIR SHARIF ALI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:19CV481 |
| | ) | |
| ERIC A. HOOKS, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entries 6, 7.) For the reasons that follow, the Court should deny Respondent's Motion for Summary Judgment.

## I.  Background

On August 8, 2014, a jury in the Superior Court of Guilford County found Petitioner (and his co-defendant) guilty of attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and first degree burglary in cases 13CRS100094, 13CRS100098-99, and 14CRS24118. See State v. Sheikh, No. COA-15-688, 786 S.E.2d 433 (table), 2016 WL 1744651, at *1 (N.C. App. May 3, 2016) (unpublished), discretionary review denied, 369 N.C. 39 (2016), cert denied sub nom., Ali v. North Carolina, ___ U.S. ___, 137 S. Ct. 1218 (2017). The trial court sentenced

Petitioner to three consecutive prison terms of 59 to 83 months, 59 to 83 months, and 23 to 40 months. See id. at *2.[1]

On October 23, 2018, a Disciplinary Hearing Officer ("DHO") at the Caswell Correctional Center (Petitioner's place of confinement on those sentences) convicted Petitioner after a hearing of disciplinary offense "A-12" for possession of an unauthorized controlled substance (ecstasy) on October 18, 2018. (See Docket Entry 7-2 at 4-13.)[2] As a result of that conviction, the DHO sentenced Petitioner to 27 days in restrictive housing for disciplinary purposes ("RHDP"), loss of 30 days of good time/gain time credits, 40 hours of extra duty, suspension of canteen and telephone privileges for 80 days, and a $10 limit on weekly trust fund withdrawals for 90 days. (See id. at 4.) On November 25, 2018, the Director of the Division of Adult Correction/Prisons Section upheld Petitioner's disciplinary conviction and sentence. (See id. at 2-3.)

Petitioner thereafter submitted his instant Petition to this Court (Docket Entry 1) seeking restoration of the 30 days of good time/gain time he lost as part of his prison disciplinary sentence

_____

[1] The North Carolina Court of Appeals found no error in Petitioner's convictions and sentences. See Sheikh, 2016 WL 1744651, at *2. After the trial court denied Petitioner's Motion for Appropriate Relief collaterally challenging his convictions and sentences, this Court dismissed Petitioner's action under 28 U.S.C. § 2254 attacking his underlying convictions and sentences without issuance of a certificate of appealability. See Ali v. Hooks, No. 17CV1034, 2018 WL 3421338, at *1 (M.D.N.C. July 13, 2018) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018) (Biggs, J.).

[2] Throughout this Recommendation, pin citations refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

(id. at 15).  Respondent has moved for summary judgment both on the merits and on grounds of nonexhaustion (Docket Entries 6, 7) and Petitioner responded in opposition (Docket Entry 10).  For the reasons explained more fully below, the Court should deny Respondent's Motion for Summary Judgment.

## II. Ground for Relief

Petitioner alleges "Due Process rights violations secured by the U.S. Constitution (14th Amendment) [and a]lso violations of rights secured by [North Carolina Department of Public Safety ('DPS')] policies" (Docket Entry 1, ¶ 12 (Ground One) (internal quotation marks omitted)), in that he "was not afforded the right to refute [the investigating officer's] evidence, [ he] was told that [he] c[ould] not speak and [he] had no rights by [the DHO, he] was not given [the] right to hear and to be heard[, and] . . . [the DHO] failed to find exculpatory evidence though there existed some" (id., ¶ 12 (Ground One)(a)).

## III. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must

give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[3]

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v.

---

[3] The Court may deny a claim on the merits despite a lack of exhaustion. See 28 U.S.C. § 2254(b)(2).

-4-

<u>Taylor</u>, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407; <u>see also</u> <u>id.</u> at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## IV. Discussion

### A. Nonexhaustion

Respondent contends that "[t]he North Carolina Supreme Court [] has clarified that prisoners raising constitutional challenges to the denial of good-time, gain-time credits, may raise these claims in state court." (Docket Entry 7 at 6 (citing <u>Jones v. Keller</u>, 364 N.C. 249, 253-54 (2010) (holding that, "as a general rule, the judiciary will not review the [Department of Corrections' ('DOC')] grant, forfeiture, or application of credits against a prisoner's sentence," but noting that the "DOC does not have carte blanche," and that "when a government action is challenged as unconstitutional, the courts have a duty to determine whether that action exceeds constitutional limits" (internal quotation marks and brackets omitted)), <u>cert. denied</u>, 563 U.S. 960 (2011)).) Respondent thus argues that, "[i]n order to exhaust state remedies at this point, Petitioner should be required to file a separate civil action in the Superior Court of Caswell County and then

appeal to the North Carolina Court of Appeals [] and seek review in the North Carolina Supreme Court [], before returning to federal court." (Id. at 7.)

In response, Petitioner points to a case before other judges of this Court in which a prisoner "filed a federal habeas corpus [petition under Section 2254] challenging prison disciplinary convictions resulting in the loss of sentence reduction credits," and the state successfully moved for summary judgment on the grounds that the prisoner must first exhaust his remedies in the state courts. (Docket Entry 10 at 6-7 (referencing Clark v. Perry, No. 1:15CV388, Docket Entry 18 (M.D.N.C. Feb. 1, 2016)).)[4] However, as Petitioner notes (id. at 7), when the prisoner in that case attempted to present his challenge regarding the loss of sentence reduction credits to the state court in a Motion for Appropriate Relief ("MAR"), the state trial court denied the MAR two days later, "f[inding] that the matter regard[ed] a disciplinary proceeding of an inmate and [was] not subject to [MAR] provisions," Clark v. Hooks, No. 1:16CV672, 2017 WL 3822898, at *1 (M.D.N.C. Aug. 8, 2017) (unpublished) (Peake, M.J.), recommendation adopted in pertinent part, 2017 WL 3724233 (M.D.N.C. Aug. 28, 2017) (unpublished) (Eagles, J.). Moreover, in responding to the

_____

[4] The order granting the state's motion for summary judgment issued a certificate of appealability "[b]ecause there [wa]s no case on point as to whether an inmate in the custody of the State of North Carolina must sue in state court to exhaust his remedies before filing a federal § 2254 action over a lack of due process in the rescission of good time credits." Clark, No. 1:15CV388, Docket Entry 18 at 5.

-6-

prisoner's subsequent petition for a writ of certiorari in the North Carolina Court of Appeals, "the [s]tate did not address the substance of [the prisoner's] claims, and instead took the position that prison disciplinary procedures [we]re a matter of internal prison administration and [we]re not amenable to direct judicial oversight." Id. at *1 n.2.

After several more unsuccessful filings in the state courts, the prisoner then filed a second Section 2254 petition in this Court, which the state moved to dismiss as untimely. Id. at *1-2. Due to the state's conflicting positions on whether exhaustion of state remedies applied in the prison discipline context, the Court held that "equitable tolling should apply to allow consideration of the merits of the [prisoner's second Section 2254 p]etition," id. at *4, and also found genuine issues of material fact precluded the state's motion for summary judgment, see id. at *7. Thereafter, in lieu of proceeding to discovery and an evidentiary hearing, the state provided the prisoner with a new disciplinary hearing. See Clark, 2017 WL 3724233, at *1. The prisoner subsequently filed a motion to amend his petition to assert due process violations arising out of his second prison disciplinary hearing, and the state filed a motion to dismiss the case. See Clark, No. 1:16CV672, Docket Entry 30 at 1 (M.D.N.C. Jan. 8, 2018). Because the prisoner did not lose any good time credits upon conviction following his second hearing, the Court denied as futile the

-7-

prisoner's motion to amend and granted the state's motion to dismiss, see id. at 4-5, but also noted that the state had continued to argue, alternatively, "that [the prisoner]'s challenge to the new disciplinary hearing should be dismissed for failure to exhaust state court remedies." Id. at 6 n.2. Although the Court did not have to reach the state's nonexhaustion argument, the Court again acknowledged the state's "apparent change in positions," noting that, "in the [] state court proceedings, [the state had taken] the position that the state court could not review prison disciplinary proceedings." Id.

In light the events in the Clark matters, the Court should conclude that a material factual question arises as to nonexhaustion, because a reasonable fact-finder could conclude that, if Petitioner sought review in state court, Respondent again would argue that state courts could not review prison disciplinary matters and the state courts would adopt that view, notwithstanding Jones. As such, the Court should deny summary judgment on the grounds of nonexhaustion, because of the existence of material factual questions as to whether "(i) there is an absence of available state corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of [Petitioner]," 28 U.S.C. § 2254(b)(1)(B).

**B. Merits**

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, inmates possess a protected liberty interest in the award of statutory good time credits and, therefore, "the minimum requirements of procedural due process appropriate for the circumstances must be observed" at prison disciplinary hearings resulting in the loss of good time credits. Id. at 557. An inmate receives due process in conjunction with a prison disciplinary proceeding if he receives: (1) advance written notice of the disciplinary charge(s) at least 24 hours before his disciplinary hearing; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence in his defense; (3) a written statement by the fact finder(s) regarding the evidence relied on and the reasons for any disciplinary action; (4) assistance from prison staff or a competent fellow prisoner, if necessary to enable the inmate to comprehend his case and present evidence in his defense; and (5) a hearing conducted by an impartial fact-finder. Id. at 563-76; see also Clark, 2017 WL 3822898, at *5. If the prison provides those protections and "some evidence" exists to support the resolution of the disciplinary charge, then the disciplinary proceedings have satisfied the Due Process Clause's procedural requirements. See

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).

Here, Petitioner contends that Respondent violated his due process rights in two respects: (1) by not providing an impartial fact-finder; and (2) by failing to allow him to remain in the hearing room, to testify on his own behalf, or to present video surveillance evidence in his own defense. (See Docket Entry 10 at 8-13.)

## 1. Impartial Fact-Finder

Petitioner argues that Respondent deprived him of "a hearing before an impartial fact-finder – that is, one whose mind [wa]s not already made up and who c[ould] give [him] a fair hearing." (Id. at 9 (citing, inter alia, Surprenant v. Rivas, 424 F.3d 5, 17-18 (1st Cir. 2005), and Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990)).) Petitioner avers under penalty of perjury that the following sequence of events occurred at his prison disciplinary hearing:

> . . . I was the first person to see [the] DHO . . . . When I entered I was asked as follows: "All I need to know from you is either guilty or not guilty."  I proceeded to let [the] DHO [] know that I wished to make an oral statement defending myself from the charge against me, but she repeated that all she wanted to hear was either guilty or not guilty from me.  Then, I objected to her refusal to allow me to make an oral defense of the charge against me and told her that her refusal to hear me was a violation of my due process right to hear and be heard . . . .  However, [the] DHO [] interrupted me and demanded an answer from me saying "Just say guilty or not guilty."  Whereupon I said: "Not guilty."  [The] DHO [] in a tone of voice that appeared

to me of surprise, then stated: "You're really gonna plead not guilty?" I again repeated "I'm not guilty and you're violating my due process rights by not letting me tell you my defense." [The] DHO [] appeared to become angrier and blurted the following: "You are an ignorant idiot [and] I'm not here for all of that, you don't have any [expletive] rights. As a matter of fact get him out of my office.["] I was immediately led out of the office and a [c]orrectional [o]fficer [] placed me back into [RHDP] . . . . Then about two hours later, the [Record of Hearing] w[as] brought to m[e] . . . . [The] DHO [] did not place in the Record all the above mentioned facts. Reviewing the . . . Record of Hearing, I did not observe pursuant to what facts did she draw her conclusion that my presence at the hearing "unduly threatened institutional safety or undermined correctional goals." Neither did I observe in this document the reason(s) by [the] DHO [] for her denial of the presentation of my live testimony at the hearing. . . . Had I been allowed to marshall an oral defense of the A-12 charge filed against me, I would have stated that[ ] I'm factually innocent of the charge because I had nothing on my person concerning any drugs[, ] I was led in the [s]hower of the L-Dorm which is a high traffic and common area and was stripped [sic] searched[ and w]hen a person is stripped [sic] searched, he is led into the receiving room because it is a secured area with no traffic[, ] I would have asked [the sergeant who found the drugs] what he meant when he said that he knew what he was looking for at the same moment he was strip searching m[e, and] I would have categorically denied the outrageous comment [the sergeant] said I made concerning the identity of the alleged substance he somehow found in the shower of L-Dorm.

(Docket Entry 10-1 at 2-5 (standard capitalization applied and paragraph numbering omitted).)

In further support of his allegations, Petitioner proffered the sworn statement of inmate Nicholas B. Tart dated October 26, 2018, who averred that, while awaiting his disciplinary hearing, he overheard the DHO "refusing to allow [Petitioner] the opportunity to refute [the investigating officer's] evidence and to explain his

side of his case and evidence," as well as telling Petitioner "'you don't have any rights'" and "dismiss[ing Petitioner] out of her office." (Id. at 6.) According to Petitioner, the "statements and actions [of the DHO] at the hearing displayed her lack of impartiality." (Docket Entry 10 at 10 (citing, inter alia, Pino v. Dalsheim, 605 F. Supp. 1305, 1318 (S.D.N.Y. 1984)).)[5]

"A prisoner is entitled to have disciplinary charges against him considered by an impartial tribunal," Bennett v. King, Nos. 92-7056, 93-6263, 19 F.3d 1428 (table), 1994 WL 81270, at *1 (4th Cir. May 24, 1994) (unpublished) (citing Wolff), but "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally," Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) (citing Cleavinger v. Saxner, 474 U.S. 193, 203-04 (1985)). Nevertheless, "[t]he touchstone of due process is freedom from arbitrary governmental action," Ponte v. Real, 471 U.S. 491, 495 (1985) (citing Wolff, 418 U.S. at 558), and "[t]he due process requirements for a prison disciplinary hearing . . . are not so lax as to let stand the decision of a biased hearing officer," Edwards v. Balisok, 520 U.S. 641, 647 (1997).

---

[5] Respondent's Brief in support of his instant Motion for Summary Judgment contends that the Record of Hearing "shows [that] Petitioner received all of his due process rights." (Docket Entry 7 at 5.) However, Respondent did not file a reply to Petitioner's Response in Opposition to Motion for Summary Judgment (see Docket Entries dated Nov. 1, 2019, to present) and thus Respondent has not specifically addressed Petitioner's arguments regarding the partiality of the DHO.

In contrast to Petitioner's (and inmate Tart's) sworn account of the hearing, the Respondent's Record of Hearing provides as follows:

> Summary of all information, evidence, or statements developed at the hearing relating to guilt or innocence:
>
> Waiver and appeal options explained to [Petitioner] who pled not guilty to A-12[.] [Petitioner] acknowledged the receipt and reading of his rights. All statements and the investigating officer's report were read during the hearing. With regard to evidentiary requests, [Petitioner] made the following:
>
> Witness Statements: None
> Live Witnesses: None
> Physical Evidence: Yes
> Staff Assistance: No
>
> Summary of evidence is as follows:
>
> On 10/18/18 at 9:50AM, [a sergeant] searched [Petitioner] and during the search [the sergeant] found a dental floss container in the back right pocket, in the container was an unknown amount of off white powder, [the sergeant] asked [Petitioner] was it Molly street name for ecstasy, and he said "yeah".
>
> [Petitioner] states that the evidence found was not his[.] He states that he did not have anything and it was not ecstasy. He states he does not know what it was.
>
> A photo copy of the test is attached to the package.
>
> Based on the reporting party's statement and investigating officer's report, a finding of guilty is entered for offenses A-12[.] Sanctions imposed to deter future acts of this nature. Copy of Record of Hearing, san[c]tions imposed, and appeal form given to [Petitioner] by DHO. Disc[iplinary] history considered when imposing sanctions.

(Docket Entry 7-2 at 7 (emphasis added and standard capitalization

applied).)  At the bottom of the Record of Hearing, the line for Petitioner's signature reads "unable to sig[n]."  (Id.)

As the above-quoted material makes clear, genuine issues of material fact remain regarding whether Respondent provided Petitioner with an impartial fact-finder in compliance with Wolff. The sworn statements of Petitioner and inmate Tart differ sharply from the Record of Hearing as to (1) whether the DHO used profanity or engaged in other unprofessional conduct towards Petitioner and/or made any statements to the effect that Petitioner had no rights; (2) whether the DHO permitted Petitioner to testify on his own behalf or present other evidence; and (3) whether the DHO ordered Petitioner removed from the hearing room, and (if so) the grounds and circumstances under which such removal occurred. Moreover, the Court cannot resolve these evidentiary conflicts at the summary judgment stage, particularly given that the Record of Hearing does not constitute a verbatim (or certified) transcript of proceedings, lacks any indication that the DHO took Petitioner's statements reflected therein under oath, and contains neither Petitioner's signature nor an explanation for the absence of his signature. (See id.)

The Second Circuit has persuasively addressed the types of partiality allegations in the prison discipline context that should withstand a motion for summary judgment. See Francis, 891 F.2d at 46. In that case, the prisoner "allege[d], *inter alia*, that [the

DHO] suppressed evidence, distorted testimony, and never informed [the prisoner] of testimony against him." Id. The Second Circuit rejected the DHO's argument that the prisoner's "specifications of bias d[id] not show actual prejudgment" of the prisoner's case by the DHO, because "the issue ar[o]se[] on a motion for summary judgment[ and] all reasonable inferences [were] drawn in favor of [the prisoner]." Id. The court noted that "a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment," but held that the prisoner "ha[d] presented more than a mere conclusory allegation." Id.

Similarly, Petitioner here has presented, via two sworn statements, "more than conclusory allegation[s] of bias," id., and the Court thus should deny summary judgment.

**2.** **Opportunity to Present Evidence**

a. Petitioner's Presence at Hearing to Offer His Own Testimony

Petitioner additionally maintains that, during his prison disciplinary hearing, he "informed [the] DHO [] several times of his due process right to be heard," but that the DHO "did not allow Petitioner to speak and marshall an oral defense . . . [violating] his most basic due process right to be heard." (Docket Entry 10 at 8 (citing Jackson v. Cain, 864 F.2d 1235, 1252 (5th Cir. 1989), McCann v. Coughlin, 698 F.2d 112, 123 (2d Cir. 1983), and Mack v. Johnson, 430 F. Supp. 1139, 1145 (E.D. Pa. 1977)); see also Docket

Entry 10-1 at 2-4 (detailing, under penalty of perjury, Petitioner's account of encounter with DHO).)[6]   According to Petitioner, the DHO "ordered [Petitioner] out of [the DHO's] office without any reasonable conclusion 'that [Petitioner's] presence would unduly threaten institutional safety or undermine correctional goals.'"  (Docket Entry 10 at 8-9 (quoting Malik v. Tanner, 697 F. Supp. 1294, 1302-03 (S.D.N.Y. 1988), and citing Battle v. Barton, 970 F.2d 779, 782 (11th Cir. 1992)); accord Docket Entry 10-1 at 3-4.)

Although the United States Supreme Court in Wolff did not expressly hold that due process includes "a prisoner's right to attend his own disciplinary hearing[, s]everal courts[ ] have indicated that such a right is implicit in the prisoner's right to call witnesses and present documentary evidence at the hearing." Battle, 970 F.2d at 782 (citing Moody v. Miller, 864 F.2d 1178, 1180 (5th Cir.1989), and Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1988)).  An inmate's presence at his disciplinary hearing

———————————

        [6] Petitioner also argues that the DHO, in refusing to permit Petitioner to speak on his own behalf, violated Section .0205(c)(1)(G) of the DPS Offender Disciplinary Procedures, "which unambiguously allow[ed] Petitioner to refute the evidence at the disciplinary hearing."  (Docket Entry 10 at 8 (emphasis in original); see also Docket Entry 7-3 at 14.)  However, "the DHO's failure to follow DPS policy does not, on its own, constitute a constitutional violation." Williams v. Joyner, Civ. No. 5:15-HC-02187, 2017 WL 3821694, at *3 (E.D.N.C. Aug. 8, 2017) (unpublished), recommendation adopted, 2017 WL 3820949 (E.D.N.C. Aug. 31, 2017) (unpublished) (citing Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the [United States] Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.")).

serves the goals of due process by "allowing the inmate to witness the proceedings against him and providing a check on the authority of the disciplinary body." Id. However, the Supreme Court has also made clear that the prison's competing interests in maintaining institutional safety and meeting other correctional goals can curtail the rights of inmates at disciplinary hearings, and that the prison satisfies due process "so long as the reasons [for depriving an inmate of his rights] are logically related to institutional safety or correctional goals." Ponte, 471 U.S. at 497 (internal quotation marks omitted); see also Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004) (recognizing that prison may limit (or deny) inmate's right to present evidence in own defense at disciplinary hearing where "legitimate penological interests justified" such limitation or denial (citing Wolff, 418 U.S. at 566)). "[T]he burden of persuasion as to the existence and sufficiency of such institutional concerns . . . is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985) (citing Ponte, 471 U.S. at 499-500).

In Respondent's Brief in support of his Motion for Summary Judgment, he contends that the Record of Hearing "shows [that] Petitioner received all of his due process rights" and that "[h]e was given . . . an opportunity [to] present documentary evidence in his defense." (Docket Entry 7 at 5.) That statement, at most, leaves the Court with a material factual dispute, in light of the

uncertified, summary nature of the Record of Hearing and Petitioner's sworn statement (and that of inmate Tate) that the DHO refused to provide Petitioner with an opportunity to testify on his own behalf, ordered Petitioner removed from the hearing room, and conducted the disciplinary hearing in his absence (see Docket Entry 10-1). Most significantly, Respondent has not borne his burden of showing that the DHO's "reasons [for refusing to take Petitioner's testimony and removing him from the hearing we]re logically related to institutional safety or correctional goals," Ponte, 471 U.S. at 497.

Under such circumstances, genuine issues of material fact remain that preclude summary judgment on Petitioner's claim that the DHO violated Petitioner's due process rights by failing to allow Petitioner to remain present during the hearing and to testify on his own behalf. See Mayweather v. Guice, No. 1:17CV100, 2018 WL 3868806, at *7 (W.D.N.C. Aug. 14, 2018) (unpublished) ("Plaintiff['s ] alleg[ations] that [the DHO] refused to allow [Petitioner] to present evidence at his disciplinary hearing . . . state a plausible due process claim against [the DHO] and this claim will be permitted to proceed.").

b.    Request for Video Surveillance Evidence

Lastly, Petitioner contends that, "[b]efore [his] disciplinary hearing was held, he requested the videotape of L-Dorm during the time of the [sergeant's search of Petitioner resulting in the A-12

charge]," which "would have shown that L-Dorm['s s]hower [a]rea [wa]s a high traffic and common area and would have shown Petitioner's innocence[,]" but that the DHO "did not review said video nor did she state[] a reason why [she did not review the video]." (Docket Entry 10 at 13; <u>see also</u> Docket Entry 10-1 at 2-5.) Petitioner asserts that he possessed "a limited due process right to examine, or have produced at the hearing, documents in prison official[s'] possession that m[ight have] help[ed] determine [his] guilt[] or innocence." (Docket Entry 10 at 13 (citing <u>Piggie v. Cotton</u>, 344 F.3d 674, 678 (7th Cir. 2003)).)

"[P]rison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in <u>Wolff</u>." <u>Lennear v. Wilson</u>, 937 F.3d 257, 269 (4th Cir. 2019). In that regard, "upon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, <u>under the particular circumstances of the case</u>, 'unduly hazardous to institutional safety or correctional goals.'" <u>Lennear</u>, 937 F.3d at 269 (quoting <u>Wolff</u>, 418 U.S. at 566) (emphasis added); <u>see also id.</u> at 270 (holding that "prison officials must consider . . . requests for video surveillance evidence[] on an individualized basis" (internal quotation marks omitted). Moreover, "prison officials bear the 'burden to come forward with evidence of the reasons for' denying

an inmate's request for access to . . . video surveillance footage," id. at 270 (quoting Smith v. Massachusetts Dep't of Corr., 936 F.2d 1390, 1400 (1st Cir. 1991)), although the "officials may wait to assert such institutional concerns until after the disciplinary hearing," id. (citing Ponte, 471 U.S. at 497). However, if such "officials fail to identify a specific safety or correctional concern, courts may not 'speculate' as to the officials' potential reasons for denying an inmate access to evidence in order to uphold a disciplinary decision." Id. (quoting Smith, 936 F.2d at 1400) (emphasis added).

Respondent asserts that the "[R]ecord of [ H]earing shows Petitioner received all of his due process rights[ and ] was given . . . an opportunity [to] present documentary evidence in his defense." (Docket Entry 7 at 5.) A careful review of the Record of Hearing and other record material undermines that assertion. To begin, the Record of Hearing supports Petitioner's averment that he requested video surveillance evidence pertinent to his case:

> Waiver and appeal options explained to [Petitioner] who pled not guilty to A-12[.] [Petitioner] acknowledged the receipt and reading of his rights. . . . With regard to evidentiary requests, [Petitioner] made the following:
>
> Witness Statements: None
> Live Witnesses: None
> Physical Evidence: Yes
> Staff Assistance: No

(Docket Entry 7-2 at 7 (emphasis added).) Petitioner's statement to prison officials confirms the specifics of the "[p]hysical

[e]vidence" requested by Petitioner (as reflected in the Record of Hearing) as "camera footage, also lab results of substance." (Id. at 13 (emphasis added); see also id. ("I was led to the [s]hower area in Unit 3 L dorm, which camera footage is requested and will show the dorm shower is a very common [a]rea with heavy traffic and activity." (emphasis added)).) The Investigating Officer's Report further bolsters Petitioner's position by stating:

> [Petitioner] understood and signed his rights as they are stated on the DC-138A form. He did not request written statements gathered on his behalf or live witnesses at his hearing. He did request physical evidence in the form of camera footage and lab results of the substance [found on Petitioner]. He did not request staff assistance.

(Id. at 8 (emphasis added and standard capitalization applied.)

Despite this evidence consistently reflecting that Petitioner did, in fact, request the videocamera footage capturing the sergeant's search of Petitioner resulting in the A-12 charge, the Record of Hearing does not indicate what action, if any, the DHO took with regard to Petitioner's request. (See id. at 7.) Similarly, none of the other documents in Petitioner's disciplinary package reflect whether the investigating officer or the DHO took any action at all with respect to Petitioner's request for the videocamera footage. (See Docket Entry 7-2.) Furthermore, Respondent did not address the video surveillance evidence in his Brief in support of his Motion for Summary Judgment (see Docket Entry 7) and has not filed a reply brief (see Docket Entries dated

Nov. 1, 2019, to present). Thus, to date, Respondent has not provided the Court with <u>any</u> information to explain how prison officials addressed Petitioner's request for the video evidence. In other words, "prison officials never have offered any safety or correctional goal – neither during the disciplinary proceedings nor in these proceedings – justifying [a] decision to deny access to and review of the requested video surveillance evidence, meaning that [at least at this stage] penological considerations cannot justify [any] alleged refusal to disclose or consider such evidence." <u>Lennear</u>, 937 F.3d at 274.

"[B]ecause Petitioner provided an uncontroverted sworn affidavit that he timely requested the video surveillance evidence, without holding an evidentiary hearing[,] the '[ C]ourt c[an]not properly assume that [Respondent]'s perspective is the right one.'" <u>Id.</u> at 275 (quoting <u>Johnson v. Finnan</u>, 467 F.3d 693, 694-95 (7th Cir. 2006)). Put another way, this Court neither may "'speculate' as to [any] potential reasons for denying [Petitioner] access to [video surveillance] evidence in order to uphold a disciplinary decision," <u>id.</u> at 270 (quoting <u>Smith</u>, 936 F.2d at 1400), nor may "resolve in the first instance" the "question[s] of fact" of "whether a video of the [search of Petitioner resulting in the A-12 charge] ever existed," <u>id.</u> at 276, and/or "whether the [video surveillance] evidence could have aided [Petitioner's] defense," <u>id.</u> at 277.

Accordingly, the Court should deny Respondent's Motion for Summary Judgment on Petitioner's claim that the DHO violated Petitioner's due process rights by failing to address his request for the video surveillance evidence pertinent to his case.

## V. Conclusion

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be denied and that this matter be set for an evidentiary hearing, with counsel appointed for Petitioner pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 29, 2020